NOTICE

Decision filed 07/13/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 180196-U

NO. 5-18-0196

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 15-CF-1527 |
| | ) | |
| LESTER SMITH, | ) | Honorable |
| | ) | Stephen P. McGlynn, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Welch and Vaughan concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court did not err in summarily dismissing the defendant's *pro se* postconviction petition, and any argument to the contrary would lack merit, and therefore the defendant's appellate counsel is granted leave to withdraw, and the judgment of the circuit court is affirmed.

¶ 2     The defendant, Lester Smith, pleaded guilty to six felony counts and was sentenced to imprisonment on each count, all pursuant to a fully negotiated plea agreement. He did not file any postplea motions. Eleven and one-half months after the guilty plea, the defendant filed a *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). He raised only claims of constitutional deprivation that occurred prior to the guilty plea. The circuit court summarily dismissed the petition. The defendant now appeals from the summary dismissal. The defendant's court-appointed attorney, the Office of the State Appellate Defender

1

(OSAD), has concluded that this appeal lacks merit, and on that basis OSAD has filed with this court a motion to withdraw as counsel, along with a memorandum of law in support thereof. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD properly served the defendant with a copy of its motion and memorandum. This court gave the defendant ample opportunity to file a *pro se* response, brief, memorandum, etc., objecting to OSAD's motion or explaining why this appeal has merit, but the defendant has not done so. This court has examined OSAD's *Finley* motion and memorandum, and the entire record on appeal, and has determined that this appeal does indeed lack merit. Accordingly, OSAD's *Finley* motion must be granted, and the judgment of the circuit court, summarily dismissing the defendant's postconviction petition, must be affirmed.

¶ 3                                    BACKGROUND

¶ 4      On January 15, 2016, a grand jury returned an indictment against the defendant, charging him with six felony counts. Counts I and II charged him with armed robbery (720 ILCS 5/18-2(a)(2) (West 2016)). Count III charged aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)). Counts IV and V charged unlawful possession of weapons by a felon (*id.* § 24-1.1(a)). Count VI charged aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1(a)(4) (West 2016)). The two armed-robbery counts (counts I and II) involved two different complainants; they both alleged that the defendant committed the offense "while carrying a firearm on his person."

¶ 5      On May 11, 2017, the State filed an information charging the defendant with two counts of armed robbery. These two armed-robbery counts were just like the two armed-robbery counts in the indictment (counts I and II) except that the new counts did not mention a firearm.

¶ 6      Later on May 11, 2017, the defendant, his public defender, and an assistant state's attorney appeared before the circuit court. The defendant waived preliminary hearing on the two armed-

2

robbery counts contained in the information filed earlier that day. The attorneys informed the circuit court that the State would move to dismiss the two armed-robbery counts of the indictment (counts I and II), and the defendant would plead guilty to the two armed-robbery counts of the information, for 17 years of imprisonment in the Department of Corrections (DOC) and 3 years of mandatory supervised release (MSR). Also under the plea agreement, the defendant would plead guilty to the remaining four counts in the indictment (counts III through VI) and would be sentenced as follows: for aggravated discharge of a firearm (count III), 10 years in the DOC and 2 years of MSR; for unlawful possession of weapons by a felon (counts IV and V), 5 years DOC and 1 year of MSR; and for aggravated fleeing or attempting to elude a peace officer (count VI), 4 years DOC and 1 year MSR. All of these sentences were to run concurrently. The circuit court asked the defendant if that was his understanding of the agreement, and the defendant answered affirmatively.

¶ 7 The court then admonished the defendant as to his rights and the waiver thereof. The court admonished that he had a right to trial, whether by judge or jury, that his attorney would be able to cross-examine the State's witnesses and to examine witnesses on his own behalf, and that entering into the plea agreement would waive those rights. The defendant indicated his understanding. He understood his right to an attorney and expressed satisfaction with her representation and thought that they had sufficient time to discuss the case. The court told the defendant that he has a right to remain silent but once he enters the plea agreement he will be admitting that he committed these offenses. The court asked, "Is that what you want to do, sir?" The defendant replied, "Yes, sir." The defendant denied taking any drugs or medications that made understanding the proceedings impossible, and he denied being threatened, forced, or coerced into this plea agreement, and he said that he was acting of his own free will.

¶ 8    The assistant state's attorney then recited a factual basis for the plea. On December 27, 2015, in Cahokia, Illinois, the defendant displayed "a dangerous weapon" to two people in a car. He threatened and took money from them. Then, the defendant got into his own car, a black Mercury Grand Prix, and drove off, with the two people he had robbed following him in their car. After a short while, the defendant got out of his car and fired one shot at the other car. The two stopped following him and called 9-1-1. Cahokia police responded, followed the defendant in his car, and noted that his car traveled at 75 miles per hour in a 45 miles per hour zone. It crossed the Poplar Street Bridge into Saint Louis. There, the defendant abandoned the car and ran briefly before being captured by the officers, who found two handguns on his person. Defense counsel stipulated to this factual basis. The defendant agreed that he had done basically what was described. The court made findings that a factual basis existed, that the plea was knowing and voluntary, and that the defendant had knowingly and voluntarily waived his rights.

¶ 9    The court reviewed each of the six counts to which the defendant would plead guilty, starting with counts I and II of the information and continuing through counts III, IV, V, and VI of the indictment. With each count, the court stated the name of the offense, the minimum and maximum prison sentences, and the MSR term. The court then asked the defendant how he pleaded to it, and as to each of the six offenses, the defendant answered, "Guilty." Accepting the pleas, the court entered judgment thereon, abiding by the plea negotiations. Counts I and II of the indictment were dismissed. The court admonished the defendant about his right to appeal, a motion to withdraw guilty pleas, etc., and the defendant indicated his understanding.

¶ 10    The defendant did not file a motion to withdraw his guilty plea. He did not otherwise attempt a direct appeal.

4

¶ 11    On March 2, 2018, the defendant filed a *pro se* postconviction petition. The defendant claimed that he had been deprived of the effective assistance of plea counsel (1) when counsel failed to move to suppress his statements to police and (2) when counsel failed to move to dismiss the charges against him. In regard to the first claim, the defendant alleged that police interrogators had used "suggestive methods of interrogation" that had rendered his statements involuntary and therefore inadmissible. In regard to the second claim, the defendant alleged that he had not been taken before the nearest judge within 48 hours after his warrantless arrest and was neither informed of the charges nor given a copy of the charges, subjecting the charges to dismissal. If these two instances of ineffective assistance had not occurred, "[d]efendant would not have pled out, and proceeded to trial." (This conclusory allegation is the defendant's sole allegation relating to how he was prejudiced by counsel's allegedly deficient conduct.) For relief, the defendant asked the court to "[r]everse and release him from his conviction and sentence" or to "[r]everse and remand with instructions" to "[q]uash indictments, without leave to refile" or to suppress statements.

¶ 12    On March 12, 2018, the circuit court entered an order that the defendant's petition was "denied." "While [the defendant] identifies shortcomings of his trial counsel," the court wrote, "he pleaded guilty to the charges and does not offer any criticisms of his counsel with respect to pleading guilty."

¶ 13    Notice of adverse judgment was received by the defendant, who filed a timely notice of appeal. OSAD was appointed to represent the defendant on appeal.

¶ 14                                    ANALYSIS

¶ 15    This appeal is from the circuit court's summary dismissal of the defendant's *pro se* petition for postconviction relief. Appellate review is *de novo*. *People v. Boykins*, 2017 IL 121365, ¶ 9. On *de novo* review, this court applies the same analysis that the circuit court would perform. *People*

*v. Tyler*, 2015 IL App (1st) 123470, ¶ 151. Therefore, this court may affirm the summary dismissal on any proper ground. *People v. Lee*, 344 Ill. App. 3d 851, 853 (2003).

¶ 16     In his petition, the defendant claimed to have been deprived of the effective assistance of counsel when counsel failed to file a motion to suppress his statements due to their involuntary nature and a motion to dismiss the charges against him due to his not being taken before a judge within 48 hours after arrest. As previously mentioned, OSAD has determined that this appeal lacks merit and has filed a *Finley* motion to withdraw. This court agrees with OSAD's determination.

¶ 17     The Act provides a method by which a defendant may assert that his conviction resulted from a substantial violation of his federal or state constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2016); *People v. Smith*, 2015 IL 116572, ¶ 9. At the first stage of proceedings, the Act requires the circuit court to independently examine a defendant's postconviction petition and enter an order thereon. 725 ILCS 5/122-2.1(a) (West 2016); *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). The circuit court needs to determine whether it should summarily dismiss the defendant's petition as frivolous or patently without merit (725 ILCS 5/122-2.1(a)(2) (West 2016)) or should order the petition to be docketed for further consideration (*id.* § 122-2.1(b)). *Edwards*, 197 Ill. 2d at 244-46. A *pro se* postconviction petition may be dismissed as frivolous or patently without merit only if its allegations, taken as true and liberally construed, fail to state the " 'gist of a constitutional claim.' " *Edwards*, 197 Ill. 2d at 244 (quoting *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996)). In other words, the petition may be dismissed "only if [it] has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.*

¶ 18    Here, the key event in the history of this case is that the defendant chose to plead guilty, knowingly and voluntarily, as shown in the record. See *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). The circuit court determined that the defendant understood the nature of the charges, the minimum and maximum sentences, that he understood his right to persist in his plea of not guilty, and that he understood the rights that he waived by pleading guilty. See Ill. S. Ct. R. 402(a) (eff. July 1, 2012). The court also found that the plea was voluntary, and that no force, threats, or promises, apart from the plea agreement itself, were used to obtain the plea. See Ill. S. Ct. R. 402(b) (eff. July 1, 2012).

¶ 19    A voluntary plea of guilty waives all nonjurisdictional errors or irregularities, including constitutional defects. *People v. Townsell*, 209 Ill. 2d 543, 545 (2004). Thus, in general, after a defendant pleads guilty, he may not raise claims of deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *People v. Ivy*, 313 Ill. App. 3d 1011, 1017 (2000). This general rule comes from the fact that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Claims that a defendant's confession was coerced, or that he was subject to improper detention postarrest, are no exception. *People v. Phelps*, 51 Ill. 2d 35, 38 (1972) ("It is unnecessary to determine the legality of petitioner's original detention or the voluntary nature of his confession since a voluntary plea of guilty waives all nonjurisdictional errors."). In *Tollett*, the United States Supreme Court stated that when a "defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267.

7

¶ 20    Here, the defendant did not attack the voluntary and intelligent character of the guilty plea. After solemnly admitting in open court that he was in fact guilty of the offenses with which he was charged, he could not raise independent claims of constitutional deprivations that occurred prior to the guilty plea. These included the failure to file a motion to suppress statements and the failure to file a motion to dismiss charges. Under these circumstances, the defendant failed to state the gist of a constitutional claim, and the circuit court had no alternative but to summarily dismiss it.

¶ 21                                CONCLUSION

¶ 22    All of the defendant's postconviction claims concerned alleged constitutional deprivations that occurred prior to the defendant's guilty plea. The circuit court therefore did not err in summarily dismissing the defendant's postconviction petition. Any contrary argument would lack merit. Therefore, OSAD is granted leave to withdraw as counsel, and the judgment of the circuit court is affirmed.

¶ 23    Motion granted; judgment affirmed.